U.S. DISTRICT COURT
Southern District of Georgia
Filed in Office

4:00 P. M.
2-14- 20 06

Deputy Clerk

# United States District Court
## for the Southern District of Georgia
### Brunswick Division

| | | |
|---|---|---|
| JAMES O. HENDERSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| PAYLESS SHOES, | : | |
| Defendant. | : | NO. CV204-70 |

## O R D E R

Plaintiff, James O. Henderson, filed this action against Defendant, Payless Shoes ("Payless"), alleging race and age discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1991, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Plaintiff subsequently amended his complaint to add a claim seeking overtime compensation due under the Fair Labor Standards Act of 1938, as amended, ("FLSA"), 29 U.S.C. § 201 et seq. Before the Court is Defendant's motion seeking summary

AO 72A
(Rev. 8/82)

judgment.   For the following reasons, Defendant's motion will be **GRANTED IN PART and DENIED IN PART**.


<u>FACTS</u>

Henderson, an African American born on December 6, 1953, was employed by Payless from March 1987 until February 26, 2003.  From September 1993 through 1995, Henderson was a store manager for Payless in Colorado and Missouri.

In the fall of 1996, Henderson came to Brunswick, Georgia. Initially, he filled in as a "manager in holding" in Savannah and Hinesville.   Henderson was made store manager when an opening became available in Waycross, approximately 60 miles from his residence.

Shortly  thereafter,  a  manager  position  opened  in Brunswick.  Although Henderson requested to be transferred to that store, the position was filled by a Caucasian male from Vermont.   It was not until this manager quit in 1999 that Henderson was made manager of the Brunswick store.  He retained that position until he was terminated on February 26, 2003.

Henderson filed the instant action on May 19, 2004.   In his complaint, Henderson alleges that Payless discharged him because of his age and race, and retaliated against him for

filing a charge with the Equal Employment Opportunity Commission ("EEOC").  On May 5, 2005, with leave of Court, Henderson amended his complaint seeking to recover alleged unpaid overtime compensation.

**DISCUSSION**

**I.   SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when no genuine issues remain and the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In so doing, all facts and reasonable inferences are to be construed in favor of the non-moving party.  See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L. Ed. 2d 176 (1962); Sweat v. Miller Brewing Co., 708 F.2d 655, 656 (11th Cir. 1983).  The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial."  Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

Summary judgment must be granted if the nonmoving party has failed to make a sufficient showing on an "an essential element of [its] case with respect to which [it] has the burden

of proof." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997) (quoting <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).


## II. DISCRIMINATION CLAIMS

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). The ADEA, similarly, makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or

4

privileges of employment, because of such individual's age .
. . ." 29 U.S.C. § 623(a)(1).

In order to prove a prima facie case of age or race
discrimination, a plaintiff must prove that he or she was: (1)
a member of the protected class; (2) qualified for the
position; (3) subjected to adverse employment action; and (4)
replaced by a person outside the protected class or suffered
from disparate treatment because of membership in the protected
class. See McDonnell Douglas Corp. v. Green, 411 U.S. 792,
802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Chapman v. AI
Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000); Armstrong
v. Flowers Hosp., Inc., 33 F.3d 1308, 1314 (11th Cir. 1994).

A plaintiff is not, however, required to prove directly
that race or age was the reason for an employer's decision to
terminate his employment. Under both Title VII and the ADEA,
in showing that the employer discriminated against him, the
plaintiff may rely on direct or circumstantial evidence of
discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S.
502, 526, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("Because
Title VII tolerates no racial discrimination, subtle or
otherwise, we devised a framework that would allow both
plaintiffs and the courts to deal effectively with employment

5

discrimination revealed only through circumstantial evidence.")
(internal quotations and citations omitted); see also Apodaca
v. Secretary of the Dep't of Homeland Sec., Slip Copy, 2006 WL
39235, *2 (11th Cir. Jan. 9, 2006) (citations omitted).

Direct evidence is "evidence, which if believed, proves
[the] existence of [the] fact in issue without inference or
presumption." Merritt v. Dillard Paper Co., 120 F.3d 1181,
1189 (11th Cir.), reh'g and reh'g en banc denied, 130 F.3d 446
(1997), (quoting Rollins v. TechSouth, Inc., 833 F.2d 1525,
1528 n. 6 (11th Cir. 1987)). If the plaintiff offers direct
evidence and the trier of fact accepts that evidence, then the
plaintiff has proven discrimination. McCarthney v.
Griffin-Spalding County Bd. of Educ., 791 F.2d 1549, 1553 (11th
Cir. 1986). Here, Henderson offers no direct evidence of
discrimination to support his claims and, therefore, must rely
on circumstantial evidence.

When the plaintiff relies upon circumstantial evidence to
establish his claim, the district court examines the claim
using the McDonnell Douglas burden-shifting framework. See
McDonnell Douglas Corp., 411 U.S. at 792, 93 S. Ct. at 1817;
Apodaca, 2006 WL 39235 at 2; Chapman, 229 F.3d at 1024.[1] Under

_____

[1]     Although the McDonnell Douglas framework originally applied to Title
(continued...)

6

this approach, if a plaintiff can establish a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S. Ct. at 1824. If the employer meets this burden, the presumption of discrimination is then rebutted and the employer is entitled to summary judgement unless the plaintiff proffers evidence sufficient to create a genuine issue of material fact that discrimination was actually the reason for the challenged action. <u>Kelliher v. Veneman</u>, 313 F.3d 1270, 1275 (11th Cir. 2002), <u>reh'g</u> and <u>reh'g en banc denied</u>, 57 Fed. Appx. 416 (2003), (citing <u>Chapman</u>, 229 F.3d at 1024-25). This can be accomplished by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action . . . ." <u>Jackson v. Ala. State Tenure Comm'n</u>, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting <u>Combs v. Plantation Patterns</u>, 106

---

(...continued)
VII cases, it is now widely accepted that the framework applies to claims of discrimination under the ADEA as well. <u>See</u> <u>Reeves v. Sanderson Plumbing Prods.</u>, Inc., 530 U.S. 133, 141-42, 120 S. Ct. 2097, 2105, 147 L.Ed.2d 105 (2000) (recognizing widespread application of <u>McDonnell Douglas</u> framework to ADEA claims); <u>Chapman</u>, 229 F.3d at 1024 (applying <u>McDonnell Douglas</u> framework to ADEA claim); <u>Turlington v. Atlanta Gas Light Co.</u>, 135 F.3d 1428, 1432 (11th Cir.), <u>reh'g</u> and <u>reh'g en banc denied</u>, 144 F.3d 57, <u>cert. denied</u>, 525 U.S. 962, 119 S.Ct. 405, 142 L.Ed.2d 329 (1998).

F.3d 1519, 1538 (11th Cir. 1997)).  The ultimate burden of persuasion, however, "remains at all times with the plaintiff," and the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

## A.   <u>Age Discrimination</u>

It is undisputed that Henderson has satisfied two of the prongs required to establish a prima facie case of discrimination.  He is a member of a protected class and he suffered an adverse employment action.  To establish a prima facie case of age discriminatory discharge, however, he must also show that a substantially younger person filled the position.  See <u>Munoz v. Oceanside Resorts, Inc.</u>, 223 F.3d 1340, 1346 (11th Cir. 2000) (quoting <u>Bogle v. Orange County Bd. Of Comm'rs</u>, 162 F.3d 653, 656-57 (11th Cir. 1998)); <u>Damon v. Fleming Supermarkets Of Fla., Inc.</u>, 196 F.3d 1354, 1359 (11th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1109, 120 S. Ct. 1962, 146 L.Ed.2d 793 (2000); <u>Jameson v. Arrow Co.</u>, 75 F.3d 1528, 1531 (11th Cir. 1996).

AO 72A
(Rev. 8/82)

Henderson has offered evidence indicating that he was replaced by a younger person. Henderson has identified Willie Mae Hines-Bey as the individual who filled the position of store manager from which he was discharged. Henderson testified by affidavit that he "recall[ed] that she showed [him] her driver's license during the hiring process, and that the stated age as reflected by her driver's license was approximately 10 years younger than [Henderson]." Similarly, in his deposition testimony, Henderson stated that "[a]t the time [he] hired [Hines-Bey], [he] had to take information from her; and if [he] recall[ed] correctly, she was ten years younger than [he]."

Payless, on the other hand, has offered evidence indicating that Hines-Bey was older than Henderson. Payless has offered affidavit testimony from Hines-Bey stating that she was born on August 8, 1953, thus making Henderson, born on December 6, 1953, almost four months younger than Hines-Bey. While a witness is competent to testify as to her own age, said testimony is subject to being tested on cross-examination as to the source of the information. See Klicke v. Allegheny Steel Co., 200 F 933, 935 (3rd Cir. 1912); United States v. Tod, 296 F. 345, 347 (2nd Cir. 1924). Therefore, genuine

issues  preclude  summary  judgment  on  Henderson's  age discrimination claim.


**B.   Race Discrimination**

Henderson  has  also  alleged  that  Payless  discriminated against him based on his race.  In addition to asserting that his discharge was racially motivated, he has asserted that his supervisor  was  overly  critical  and  demeaning  towards  him because  of  his  race,  thereby  creating  a  hostile  work environment.[2]


**1.   Discriminatory Discharge**

In his complaint, Henderson alleged that his termination was racially motivated.  In addition to establishing that he was a member of a protected class and he suffered an adverse employment  action,  Henderson  must  show  that  he  was  qualified

---

[2]   Henderson also avers that he was discriminated against when his request for a transfer to the Brunswick store was denied in favor of a young, Caucasian male from Vermont.  While the exact date of this incident is unclear from the record, it had to have been prior to 1999, when Henderson was made manager of the Brunswick Store.  Thus, the claim is barred by the applicable statute of limitations.  See 42 U.S.C.A. §§ 2000e-5(e)(1) (charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred) and (f) (Commission has one hundred and eighty days from the filing of such charge to notify of decision, at which time the person aggrieved has ninety days to bring a civil action against the respondent named in the charge).

AO 72A
(Rev. 8/82)

for the position and that "he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." Maynard v. Bd. of Regents of the Univs. of the Fla. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003).

As previously discussed, Henderson identified Hines-Bey as the individual who replaced him as manager of the Brunswick store. Hines-Bey, however, is African American, the same race as Henderson. Furthermore, Henderson has failed to identify any similarly situated non-African American managers who were treated differently than he was. Thus, he has failed to establish a prima facie case of race discrimination with regard to his termination. In light of Henderson's failure to demonstrate that he was replaced by a person outside his protected class, or treated less favorably than similarly situated persons, the Court need not address Payless's argument that he was not qualified for the position.

## 2.   Hostile Work Environment

Henderson further alleges that his district supervisor, Bill Branham, was overly critical and demeaning in his treatment of Henderson because of his race. Henderson has

11

offered testimony that the discriminatory treatment began at a meeting in November 2002 in Charleston, South Carolina. Specifically, Henderson asserts that Branham "was trying to dog [him] out" by cutting him off and talking over him when Henderson attempted to participate in the discussion with management. Henderson contends that Branham's hostile treatment of Henderson continued after the meeting.

To establish a hostile work environment claim, a plaintiff must show: (1) he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) the harassment was based on his race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is vicariously or directly responsible for such environment. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (citing Mendoza v. Borden, 195 F.3d 1238, 1245 (11th Cir. 1999)); Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1279-80 (11th Cir. 2003). A hostile work environment claim under Title VII requires evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment

12

and create an abusive working environment[.]" <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 78, 118 S. Ct. 998, 1001 (1998) (quoting <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L.Ed.2d 295 (1993)); <u>Miller</u>, 277 F.3d at 1275; <u>Jackson v. Motel 6 Multipurpose, Inc.</u>, 130 F.3d 999, 1008 n.17 (11th Cir. 1997), <u>reh'g</u> and <u>reh'g en banc denied</u>, 167 F.3d 542 (1998).

In objectively determining whether alleged harassment creates a hostile environment, factors to consider include: (1) frequency of the discriminatory conduct; (2) severity of the discriminatory conduct; (3) whether the conduct is threatening or humiliating; and (4) whether the conduct unreasonably interferes with the employee's performance at work. <u>Abel v. Dubberly</u>, 210 F.3d 1334, 1339 (per curiam) (11th Cir. 2000); <u>Miller</u>, 277 F.3d at 1276; <u>Allen</u>, 121 F.3d at 647. Furthermore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." <u>Apodaca</u>, 2006 WL 39235 at *3 (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998)) (citation omitted).

13

The Court concludes from the record that Henderson fails to establish a prima facie case for hostile work environment. As in most harassment claims, Henderson has failed to establish from an objective standpoint that the alleged harassment was so frequent, severe, or pervasive to constitute actionable racial harassment under title VII.   See Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 583 (11th Cir.), reh'g and reh'g en banc denied, 229 F.3d 1171 (2000), cert. denied, 531 U.S. 1076, 121 S.Ct. 772, 148 L.Ed.2d 671 (2001)

> (The fourth element — that the conduct complained of was 'sufficiently severe or pervasive to alter the conditions of  employment and create an abusive work environment' — is the element that tests the mettle of most . . . harassment claims.  Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that Title VII does not become a mere 'general civility code.').

Henderson has provided the Court with only one specific incident during a regional meeting in South Carolina, and a general reference to overly critical and demeaning treatment. Henderson provides no evidence that the that the alleged treatment by Bill Branham was racially motivated or severe and pervasive, as required to establish a prima facie hostile work environment claim.

III.          RETALIATION CLAIM

Henderson alleges that Payless provided negative and/or unfavorable references to potential employers in retaliation against him for filing a discrimination charge with the EEOC. To establish a prima facie showing of retaliation under Title VII, Henderson must show: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events. Cooper v. S. Co., 390 F.3d 695, 740 (11th Cir. 2004), reh'g and reh'g en banc denied, 143 Fed. Appx. 310, cert. denied, 126 S.Ct. 478 (Mem), 163 L.Ed.2d 363 (2005) (quoting Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994)); Gupta, 212 F.3d at 587. 42 U.S.C. § 2000e-3(a) makes it unlawful for an employer to retaliate against an employee for filing an EEOC charge. See Andrews v. Lakeshore Rehabilitation Hosp., 140 F.3d 1405, 1412-13 (11th Cir. 1998) (Claim for retaliation due to filing race discrimination claim with the EEOC is cognizable under the amended § 1981.).

Henderson's sole basis for his retaliation claim is that he submitted applications to two retail stores with known management openings, and received no response. In order to survive summary judgment, however, Henderson must present more

AO 72A
(Rev. 8/82)

than his own, subjective self-appraisal to create a genuine issue of fact.  See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir.), reh'g and reh'g en banc denied, __ F.3d __ 2005) (quoting Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 931-32 (7th Cir. 1995)) ("[U]nsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion.  Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (emphasis in original).  Henderson admits that he has no evidence and bases this allegation on his "susp[icion]" that bad references were provided to prospective employers.  Such speculation premised solely on his alleged inability to find a job in what he considered a favorable market is an insufficient legal or factual basis for Henderson's retaliation claim.

Even were the Court to credit Henderson's suspicions, however, he cannot rely on Payless's alleged unfavorable references to satisfy the adverse action element.  In order to sustain a retaliation claim, the plaintiff must show that the adverse act followed engagement in the protected conduct.  Griffin v. GTE Fla., Inc., 182 F.3d 1279, 1284 (11th Cir. 1999)

("At a minimum, [the plaintiff] must show that the adverse act followed the protected conduct . . . ."); <u>see also</u> <u>Collado v. United Parcel Serv., Co.</u>, 419 F.3d 1143, 1158-59 (11th Cir. 2005) (Employee could not rely on adverse employment action taken prior to filing his EEOC charge to establish adverse action element of Americans with Disabilities Act retaliation claim). Henderson avers that he applied for the manager openings at Family Dollar and Bell's "right after" his termination on February 26, 2003. His EEOC charge was filed in July of 2003. Thus, any alleged unfavorable references were provided before Henderson had filed his EEOC charge, the protected conduct in the instant case.


## IV. OVERTIME COMPENSATION CLAIM

Henderson filed an amended complaint asserting a claim for overtime pay on May 5, 2005, more than two years and two months after his termination. Because this claim does not relate back to those asserted in his original complaint, and he has failed to establish a willful violation by Payless, Henderson's overtime compensation claim is barred by the FLSA's two year statute of limitations.

AO 72A
(Rev. 8/82)

## A.   Relation Back

Henderson contends that his FLSA claim is not barred by the statute of limitations because it relates back to the time of the filing of his original complaint pursuant to Federal Rule of Civil Procedure 15(c).  An amended claim relates back to those in the original pleading if it arises out of the conduct, transaction, or occurrence set forth in the original pleading.  Fed. R. Civ. P. 15(c).  The rationale behind the rule is that a party who has been notified of litigation concerning a particular occurrence is given all the notice that statutes of limitations were intended to provide.  Jacobi v. Blocker, 153 F.R.D. 84, 88 (E.D. Va. 1994).  It was not, however, intended to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts.  Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003).  Thus, if the original complaint "gives fair notice of the general fact situation out of which the claim or defense arises, an amendment . . . will relate back even though the statute of limitations has run in the interim. []  An amendment which states an entirely new claim for relief based on different facts will not relate back."  Forzley v. AVCO Corp. Elec. Div., 826 F.2d 974, 981 (11th Cir. 1987) (citing 3 J.

18

Moore, Moore's Federal Practice § 15.15[3] at 15-147 to 149 (2d ed. 1985)).

Henderson filed his original complaint on May 19, 2004, alleging Payless discharged him because of his age and race, and retaliated against him for filing a charge with the EEOC. That complaint was based solely on the grounds that Payless improperly discriminated and retaliated against him. Henderson's amended complaint, in contrast, was based on Payless's alleged failure to provide overtime compensation. Thus, the claim for overtime compensation did not arise out of the transaction or occurrence of the original complaint and, accordingly, does not relate back to Henderson's original complaint.


**B.    Statute of Limitations**

Henderson further contends that Payless acted in bad faith in failing to pay him overtime compensation and, therefore, the three year statute of limitations applies.  A civil action to enforce the FLSA must be commenced within two years of the violation, however, the statute of limitations is extended to three years for "a cause of action arising out of a willful violation."  29 U.S.C. § 255(a).  A violation is willful when

19

an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the FLSA.  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988) (applying standard of willfulness adopted in Trans World Airlines v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)); Reich v. Dep't of Conservation and Natural Resources, 28 F.3d 1076, 1084 (11th Cir. 1994).  However,

> if an employer's FLSA violations stem from mere
> negligence or from actions that are unreasonable but
> not 'reckless,' the employer's liability for
> compensatory damages is limited to no more than two
> years.  Similarly, the mere fact that the employer
> knows the FLSA is 'in the picture' is not dispositive
> of willfulness, and a mere lack of prudence is
> insufficient to support a finding of willfulness.

Am. Jur. 2d, Labor and Labor Relations § 3361.  The plaintiff has the burden to demonstrate reckless disregard in order to extend the statute of limitations.  See McLaughlin, 486 U.S. at 135, 108 S.Ct. at 1682.

Henderson bases his overtime claim on Payless's alleged bad faith failure to provide compensation upon demand.[3]  Thus, Henderson does not argue that Payless acted with actual knowledge that it was violating the FLSA by not paying

---

[3]   Although not relied on by the Court, it is questionable whether Henderson's demand "for all moneys owed," with no reference to overtime compensation directly, is sufficient demand for purposes of the FLSA.

plaintiff overtime compensation, but "[r]ather, []he contends that [Payless] acted with reckless disregard for its obligations under the statute. This argument is inextricably entwined with the merits of [Henderson's] claim." See Lockaby v. Top Source Oil Analysis, Inc., 998 F. Supp. 1469, 1471 (N.D. Ga. 1998).

Under the FLSA, an employer must pay an employee overtime unless that employee can be categorized as an "employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). For the "executive" exemption to apply, the employee must perform primarily "management" duties and must be paid on a "salary basis." 29 C.F.R. § 541.100(a); Freeman v. City of Mobile, Ala., 146 F.3d 1292, 1297 (11th Cir. 1998). Two tests are utilized to determine whether the executive exemption applies, a "long test" and a "short test." See 29 C.F.R. § 541.1. Salaried employees earning $250 per week, or more, must satisfy what has been termed as the "short test." Hogan v. Allstate Ins. Co., 361 F.3d 621, 626 (11th Cir. 2004).

In the instant case, it is undisputed that Plaintiff earned more than $250 per week. In fact, at the time he was terminated, Henderson was making approximately $600 per week.

AO 72A
(Rev. 8/82)

Thus, he is subject to the short test. The short test requires: (1) that Plaintiff's primary duties consisted of management of a customarily recognized department or subdivision of Payless; and (2) that Plaintiff customarily and regularly directed the work of two or more employees employed there. 29 CFR § 541.1(f). It is undisputed that Henderson supervised the work of at least two full-time employees during his tenure as the manager of the Brunswick store. Thus, the only requirement in contention is whether or not his primary duty was managerial in nature.

Section 541.03 lists five factors that should be weighed when determining whether an employee's primary duty was managerial in nature: (1) time spent in the performance of the managerial duties; (2) relative importance of managerial and non-managerial duties; (3) the frequency with which the employee exercises discretionary powers; (4) the employee's relative freedom from supervision; and (5) the relationship between the employee's salary and the wages paid employees doing similar non-exempt work. 29 C.F.R. § 541.03.

Plaintiff contends that he spent approximately 5-10% of his time on exempt activities. However, this fact alone does

not preclude a finding that Plaintiff's primary duty was management.   Time alone is not the sole test.

> Instead, courts recognize that the time spent performing non-managerial duties is not determinative under the short test, but rather, 'the employee's primary duty is what []he does that is of principal value to the employer, not the collateral tasks that []he may also perform, even if they consume more than half h[is] time.'

Jackson v. Advance Auto Parts, Inc., 362 F. Supp.2d 1323, 1334 (N.D. Ga. 2005).

Henderson's "employment duties were at least sufficiently close to fitting within the criteria for the exemption that [Payless's] failure to pay h[is] overtime cannot, without more, be found to demonstrate a reckless disregard for its obligations under the FLSA."   See   Lockaby, 998 F. Supp. at 1472.   During his deposition, Henderson testified that his store was one of approximately 30 under the management of district manager Branham, who visited the Brunswick store once a month and who conducted quarterly meetings in Charleston, South Carolina, where his office was located, and telephonic conferences once a week, with the managers of all the stores under his supervision.   Henderson was responsible for the day to day management of the store and his duties included recruiting, interviewing, and making recommendations to the

district manager for hiring personnel; training, monitoring and evaluating performance, and recommending pay raises and promotions; and implementing Payless discipline procedures. The Court is aware of the fact that Plaintiff did spend a significant amount of time on non-exempt activities. However, the record indicates that these activities were performed simultaneously with his managerial duties. An unsatisfied demand for overtime compensation, without more, is insufficient to establish the requisite reckless disregard necessary to extend the statute of limitations. Therefore, no genuine issue of material fact precludes summary judgment on the issue of the applicability of the two year limitations period.

## CONCLUSION

The Court has read and considered the positions of all parties to this action. For the reasons set forth above, Payless's Motion for Summary Judgment (Doc. No. 34) is **GRANTED IN PART and DENIED IN PART**.

Payless's motion seeking summary judgment of Henderson's age discrimination claim is **DENIED**. Payless's motion seeking summary judgment on the remaining claims is **GRANTED**.

**SO ORDERED**, this _____14_____ day of February, 2006.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA